NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARASH EMAMI, MD, PC, d/b/a<br>UNIVERSITY SPINE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>QUINTELES IMS, f/k/a IMS HEALTH, INC.<br>EMPLOYEE HEALTH BENEFITS PLAN,<br><br>Defendant. | CIVIL ACTION NO. 17-3069 (JLL)<br><br>**O P I N I O N** |

**LINARES, Chief District Judge**

The defendant in this action, IMS Health Incorporated Health Plan (hereinafter, "the Plan"), which is improperly named as Quinteles IMS, is an employment-based health plan (hereinafter, "the Plan"). (ECF No. 1 at 2; ECF No. 1-1 at 5; ECF No. 10-1 at 7.) The plaintiff is a medical provider (hereinafter, "the Medical Provider"). (ECF No. 1-1 at 5.)

Pending before the Court is the Plan's motion pursuant to Federal Rule of Civil Procedure (hereinafter, "Rule") 12(b)(1) and Rule 12(b)(6) to dismiss the complaint. (ECF No. 10 through ECF No. 10-4; ECF No. 16.) The Medical Provider opposes the motion. (ECF No. 13; ECF No. 13-1.)

The Court resolves the Plan's motion to dismiss upon a review of the papers and

without oral argument. *See* L. Civ. R. 78.1(b). For the following reasons, the Court grants the motion, and dismisses the complaint with prejudice.

## BACKGROUND

The Court presumes that the parties are familiar with the factual context and the procedural history of the action, and will only set forth a brief summary here. The Medical Provider: (a) is not a part of the Plan's network of approved medical providers; and (b) performed surgery on a patient (hereinafter, "the Patient") who was covered by the Plan. (ECF No. 1-1 at 5; ECF No. 10-1 at 7–8; ECF No. 13 at 7–8.) After the surgery was performed, the Patient assigned the rights to reimbursement from the Plan to the Medical Provider. (ECF No. 1-1 at 5; ECF No. 13 at 7–8; ECF No. 13-1 at 4–5.) The Medical Provider alleges that the Plan failed to provide a complete reimbursement for the aforementioned surgical services, and thus the Medical Provider seeks to recover $167,489.45 in additional payments from the Plan as an assignee of the Patient. (ECF No. 1-1 at 6.)

The Medical Provider originally brought this action to recover reimbursement for the surgical services under the terms of the Plan in New Jersey state court pursuant to the Employee Retirement Income Security Act (hereinafter, "ERISA"). (ECF No. 1-1 at 6.)[1] The Plan then removed the action from state court pursuant to the Court's federal

---

[1] The Medical Provider relied solely upon ERISA in the complaint, and did not assert any causes of action under state law therein. (ECF No. 1-1.) Thus, the Court need not engage in an ERISA preemption analysis here.

2

jurisdiction based upon ERISA. (ECF No. 1 at 2–4 (citing 29 U.S.C. § 1132(a)(1)(B); 28 U.S.C. § 1331).)

The Plan now argues that the Medical Provider's complaint should be dismissed, because the Medical Provider is without authority to pursue the claim for reimbursement due to the existence of an anti-assignment clause in the Plan (hereinafter, "the Anti-Assignment Clause"). (ECF No. 10-1.) The Plan argues that the Anti-Assignment Clause prohibits the assignment of benefits by a Plan participant or beneficiary to a medical provider. (Id.) It specifically provides the following:

> You authorize the Claims Administrator, on behalf of the Employer, to make payments directly to Providers for Covered Services. The Claims Administrator also reserves the right to make payments directly to you. Payments may also be made to, and notice regarding the receipt and/or adjudication of claims, an Alternate Recipient, or that person's custodial parent or designated representative. Any payments made by the Claims Administrator will discharge the Employer's obligation to pay for Covered Services. ***You cannot assign your right to receive payment to anyone else***, except as required by a "Qualified Medical Child Support order" as defined by ERISA or any applicable Federal law. Once a Provider performs a Covered Service, the Claims Administrator will not honor a request to withhold payment of the claims submitted.
>
> The coverage and any benefits under the Plan are not assignable by any Member without the written consent of the Plan, except as provided above.

(ECF No. 10-2 at 54–55 (emphasis added).)

The Plan also contains a waiver clause (hereinafter, "the Waiver Clause"). It specifically provides the following:

3

> No agent or other person, except an authorized officer of the Employer, has authority to waive any conditions or restrictions of the Plan, to extend the time for making a payment to the Plan, or to bind the Plan by making any promise or representation or by giving or receiving any information.

(Id. at 70.)

In opposition, the Medical Provider argues that the Anti-Assignment Clause is void and unenforceable, and asserts that the Clause violates the intent of ERISA and of New Jersey state law. (ECF No. 13.) In the alternative, the Medical Provider argues that even if the Court were to hold that the Anti-Assignment Clause is valid and enforceable, the Plan waived the Anti-Assignment Clause by directly corresponding and engaging in its administrative process with the Medical Provider on the issue of reimbursement before this action was brought. (Id.)

## LEGAL STANDARDS

The Court is guided by the following standards in resolving the Plan's motion to dismiss.

### I.  Rule 12(b)(1)

It is not necessary for this Court to restate the standard for resolving a motion to dismiss a complaint that is made pursuant to Rule 12(b)(1), because that standard has been already enunciated. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (setting forth the standard, and explaining *Mortensen v. First Fed. Sav. & Loan Ass'n*,

549 F.2d 884 (3d Cir. 1977), *Petruska v. Gannon Univ.*, 462 F.3d 294 (3d Cir. 2006), and *Constitution Party of Pa. v. Aichele*, 757 F.3d 347 (3d Cir. 2014)).

## II. Rule 12(b)(6)

It is also not necessary for this Court to restate the standard for resolving a motion to dismiss a complaint that is made pursuant to Rule 12(b)(6), because that standard has been already enunciated. *See Palakovic v. Wetzel*, 854 F.3d 209, 219–20 (3d Cir. 2017) (setting forth the standard, and explaining *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–12 (3d Cir. 2009) (setting forth the standard, and explaining *Iqbal* and *Twombly*).

## DISCUSSION

"A civil action . . . to recover benefits due . . . under the terms of [an employment-based health] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan" are supposed to be initiated "by a participant or beneficiary." 29 U.S.C. § 1132(a). Thus, under ERISA, "standing . . . is limited to participants and beneficiaries." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). However, a medical provider who renders medical services may bring a claim for reimbursement against an employment-based health plan by obtaining an assignment of rights from the plan participant or beneficiary. *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).

But even though a medical provider may obtain such an assignment, an employment-based health plan is authorized to bar that assignment of such rights to a medical provider by including an anti-assignment clause in its terms. *See Am. Orthopedic & Sports Med. v. Indep. Blue Cross, LLC*, No. 16-8988, 2017 WL 1243147, at *3–4 (D.N.J. Feb. 24, 2017). It is now well-settled law in the District of New Jersey that the type of Anti-Assignment Clause used by the Plan in this case is valid and enforceable. *See IGEA Brain & Spine, P.A. v. Blue Cross & Blue Shield of Minn.*, No. 16-5844, 2017 WL 1968387, at *1–2 (D.N.J. May 12, 2017) (granting the motion by an administrator of a health benefit plan to dismiss a medical provider's reimbursement claim based on the existence of an anti-assignment clause within the plan); *Am. Orthopedic & Sports Med.*, 2017 WL 1243147, at *1–3 (same); *Advanced Orthopedics & Sports Med. v. Blue Cross Blue Shield of Mass.*, No. 14-7280, 2015 WL 4430488, at *3–6 (D.N.J. July 20, 2015) (same); *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 WL 4387981, at *7–8 (D.N.J. July 15, 2015) (same); *Prof'l Orthopedic Assocs., PA v. CareFirst BlueCross BlueShield*, No. 14-4486, 2015 WL 4025399, at *1–4 (D.N.J. June 30, 2015) (same); *Menkowitz v. Blue Cross Blue Shield of Ill.*, No. 14-2946, 2014 WL 5392063, at *1–3 (D.N.J. Oct. 23, 2014) (same); *Torpey v. Blue Cross Blue Shield of Tex.*, No. 12-7618, 2014 WL 346593, at *1–5 (D.N.J. Jan. 30, 2014) (same). Here, the Anti-Assignment Clause is clear and unambiguous, and thus it is valid and enforceable.

Furthermore, it is now well-settled law in the District of New Jersey that the Plan did not waive the Anti-Assignment Clause by dealing directly with the Medical Provider

in the claim review process, or by directly remitting payment to the Medical Provider. *See IGEA Brain & Spine, P.A.*, 2017 WL 1968387, at *3 & n.4 (holding that "[s]imply engaging in a claim review process with [a medical provider] does not demonstrate a clear and decisive act to waive the Plan's anti-assignment provision," and that "even remitting payment directly to a provider does not render anti-assignment provisions unenforceable") (internal quotation marks and citations omitted); *Advanced Orthopedics & Sports Med.*, 2015 WL 4430488, at *6–8 (D.N.J. July 20, 2015) (holding the same). Thus, the Medical Provider simply does not possess the authority to bring this action against the Plan.

Therefore, the Plan's motion to dismiss the complaint based upon the existence of the Anti-Assignment Clause and the supplemental Waiver Clause is granted, and the complaint is dismissed with prejudice. In view of this disposition, the Court need not address the alternative arguments raised by the Plan is support of its motion.

## CONCLUSION

For the aforementioned reasons, the Court grants the motion to dismiss. The Court will enter an appropriate order and judgment.

_____
JOSE L. LINARES
Chief Judge, United States District Court

Dated: September 21st, 2017